CLINTON MILNER *v.* COMMISSIONER OF
CORRECTION
(AC 19130)

Mihalakos, Pellegrino and Peters, Js.

Argued October 24, 2000—officially released June 19, 2001

*Adam A. Laben,* special public defender, with whom, on the brief, was *Denise Ansell,* special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas,* assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,* state's attorney, and *Carl E. Taylor,* supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Clinton Milner, appeals from the judgment dismissing his petition for a writ of habeas corpus following his conviction, after a jury trial, of murder in violation of General Statutes § 53a-54a. On appeal, the petitioner claims that the habeas court improperly concluded that (1) his right

to due process was not violated by the state's failure to conduct more specific and timely testing of blood evidence and (2) he was not denied effective assistance of counsel.[1] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of this appeal. In 1984, at the murder trial, the state presented circumstantial evidence that the petitioner had murdered Susan Kennedy. Susie Jackson testified that she saw the petitioner, who was wearing a red T-shirt and blue jeans, and who had been carrying a knife, during the hours immediately preceding Kennedy's murder. Paul Cooper, Laurie Philbrick and William Campbell testified that they had witnessed a man, fitting the petitioner's description, wearing a red T-shirt, blue jeans and sneakers at the scene of the crime or in its immediate vicinity. Furthermore, Barbara Floyd, Santo Biondo, Felix Acevedo, Carolyn Hatchett and Henry Ellis testified that they had observed the petitioner, who was wearing a red T-shirt, blue pants and sneakers, running away from the murder scene shortly after the crime was committed. Subsequent to the murder, while the petitioner was being held at the Hartford Correctional Center, he told fellow

---

[1] In the present appeal, the petitioner has also claimed that his right to a fair trial was violated when the state failed to present at trial a pack of cigarettes found at the murder scene. In his direct appeal, the petitioner argued that he was deprived of a fair trial because the state had either lost or misplaced, among other items of evidence, the package of cigarettes. See *State* v. *Milner*, 206 Conn. 512, 540–41, 539 A.2d 80 (1988). We agree with the state that, because those two claims are functionally identical, the doctrine of res judicata bars us from addressing the merits of the petitioner's claim. "Res judicata is a doctrine grounded in public policy, whose primary function is to prevent the relitigation of issues already decided in a court of competent jurisdiction. . . . The doctrine applies to criminal as well as civil proceedings and to state habeas corpus proceedings . . . ." (Citation omitted.) *Brown* v. *Commissioner of Correction*, 44 Conn. App. 746, 750, 692 A.2d 1285 (1997) (holding that habeas court properly dismissed petition because claims had been fully litigated in petitioner's direct appeal). We therefore decline to address the petitioner's claim.

inmates Carl Blair and Edward Watts that he had committed the murder.

The petitioner was convicted of having murdered Kennedy. The judgment of conviction was affirmed on direct appeal. *State* v. *Milner*, 206 Conn. 512, 539 A.2d 80 (1988). In his direct appeal to our Supreme Court, the petitioner did not challenge the sufficiency of the evidence against him. The petitioner commenced this habeas corpus proceeding on February 27, 1991.

The following additional findings of fact by the habeas court are relevant to our disposition of this appeal. Both the victim and Robert Torres, an initial suspect, have type O blood.[2] The petitioner has type B blood. The knife used to commit the murder was covered with type O blood. Water taken from the kitchen sink trap in Torres' apartment indicated the presence of blood and other human body fluids. The blood type, however, could not be identified because the blood was mixed with water. Both type O and type B blood were found on the victim's clothing. Scrapings under the victim's unbroken fingernails indicated the presence of type O blood. The court also found that isoenzyme testing was not performed until approximately eleven months after the crime was committed and, therefore, the results were inconclusive.[3]

Testimony given at the habeas hearing indicated that in 1984, ABO typing and isoenzyme testing were the only tests available to analyze blood samples. Unlike

---

[2] The petitioner has suggested that Torres, a witness at the criminal trial, was the perpetrator. The habeas court found, however, that no evidence of any significance was produced at the criminal trial or at the habeas hearing to support that claim.

[3] In February, 1997, the habeas court ordered further DNA testing of the available blood samples. As a result of those DNA tests, the petitioner was excluded as a source of the blood on the knife. The tests, however, were inconclusive with respect to the jeans, and no sample was available for testing from the victim's underpants.

isoenzyme testing, ABO typing can differentiate between types of blood, but cannot distinguish between donors. The habeas court also found that isoenzyme testing is of value only on fresh bloodstains and that dried blood samples may provide no useful information or, in some cases, misinformation. Enzyme testing of blood samples will not pinpoint the actual donor of blood, but it can exclude a certain percentage of the population. Furthermore, the accuracy of isoenzyme testing deteriorates according to the age and the conditions of the storage of the sample. Therefore, the habeas court concluded that "it is possible that, if the testing had been done at a time shortly after the samples were collected at the scene, they may have excluded the petitioner as the donor. Equally possible, however, is that such testing may have yielded no results or even misinformation."

On November 25, 1998, the court filed a memorandum of decision, rejecting the petitioner's claims and denying his petition for a writ of corpus. In its well reasoned memorandum of decision, the court concluded that the strong and persuasive circumstantial evidence presented at the criminal trial precluded the unlikely possibility that had isoenzyme blood testing been performed in August, 1984, it would have produced exculpatory evidence. The court on December 10, 1998, granted the petitioner's petition for certification to appeal. Thereafter, the petitioner timely filed this appeal.

I

Before we address the merits of the petitioner's claims, we must first determine whether the habeas court properly found that the state failed to raise the defense of procedural default in a timely manner, which eliminated the petitioner's obligation in the present habeas action to prove cause and prejudice before pursuing claims that were not raised on direct appeal.

The petitioner has raised, in the present appeal, a constitutional claim that he did not bring in his direct appeal from the judgment of conviction. See id. Generally, "[b]ecause habeas corpus proceedings are not an additional forum for asserting claims that should properly be raised at trial or in a direct appeal, a petitioner must meet the 'cause and prejudice' standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), for determining the reviewability of habeas claims that were not properly pursued on direct appeal. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993)." *Tillman* v. *Commissioner of Correction*, 54 Conn. App. 749, 755, 738 A.2d 208, cert. denied, 251 Conn. 913, 739 A.2d 1250 (1999).

It is clear that the petitioner bears the burden of proof to establish cause and prejudice. "Unless the petitioners can satisfy that standard, they are not entitled to review of their claims on the merits." *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 419, 589 A.2d 1214 (1991). It is not so clear, however, as to which party has the burden of raising the issue of the petitioner's procedural default and as to how the issue should properly be raised.[4]

In the present case, the habeas court found that the petitioner was relieved of his burden of showing cause and prejudice because the state had failed to raise the petitioner's procedural default as a defense. The court based its decision on Practice Book § 23-30 (b), which requires the respondent to raise as a defense any procedural default in its return.[5] After finding that the state

---

[4] We note that it was unnecessary for our Supreme Court to address the issue of which party has the initial burden of pleading procedural default in *Johnson* v. *Commissioner of Correction*, supra, 218 Conn. 403, because the state had specifically pleaded procedural default in its return.

[5] Practice Book § 23-30 (b) provides: "The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

had failed to raise the defense of procedural default, the court concluded that the petitioner was not required to show cause and prejudice. Accordingly, the court considered the petitioner's constitutional claims.

We first note that there is no Connecticut appellate authority that has squarely determined which party bears the initial burden of raising procedural default in a habeas action before the petitioner must establish cause and prejudice. Accordingly, we look to the case law of our federal and sister jurisdictions for guidance. In *Trest* v. *Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 139 L. Ed. 2d 444 (1997), the United States Supreme Court stated[6] that "procedural default is normally a defense that the State is obligated to raise and preserv[e] if it is not to lose the right to assert the defense thereafter. *Gray* v. *Netherland*, 518 U.S. 152, 166 [116 S. Ct. 2074, 135 L. Ed. 2d 457] (1996); see *Jenkins* v. *Anderson*, 447 U.S. 231, 234 n.1 [100 S. Ct. 2124, 65 L. Ed. 2d 86] (1980). We are not aware of any precedent stating that a habeas court *must* raise such a matter where the State itself does not do so." (Emphasis in original; internal quotation marks omitted.) Furthermore, in *Gray* v. *Netherland*, supra, 166, the court stated that, had the petitioner's claim been heard in a previous appeal, "the [state] would have been obligated to raise procedural default as a defense, or lose the right to assert the defense thereafter." In *United States* v. *Canady*, 126 F.3d 352, 359–60 (2d Cir. 1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1092, 140 L. Ed. 2d 148 (1998), the United States Court of Appeals for the Second Circuit refused to consider the government's defense of procedural default because the government had failed to raise it originally in the United States District Court. Although

---

[6] We note that in *Trest* v. *Cain*, supra, 522 U.S. 89, the United States Supreme Court's discussion of procedural default is premised on the federal notion of the independent and adequate state ground doctrine, which " 'is grounded in concerns of comity and federalism.' "

none of the previously cited cases held that the state must first plead the petitioner's procedural default before the petitioner is required to show cause and prejudice, the principles they advance, albeit in dicta, are instructive to our analysis.

Commentators on federal habeas practice have stated that petitioners "generally need not raise waiver and procedural default matter in their initial pleading and briefs, because the burden to raise and prove those defenses is on the state." 1 J. Liebman, Federal Habeas Corpus Practice & Procedure (1988) § 24.5 (e), p. 361. "If the state fails to apprise the federal courts in a timely fashion of a state procedural bar, the procedural default rule does not bar federal habeas corpus relief." 2 J. Liebman & R. Hertz, Federal Habeas Corpus Practice & Procedure (3d Ed. 1998) § 26.2 (a), pp. 1043–44 & n.2.

That view also is supported by *Engle* v. *Isaac*, 456 U.S. 107, 124–25 n.26, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982), in which the United States Supreme Court stated that "[i]n some cases a State's plea of default may come too late to bar consideration of the prisoner's constitutional claim." Similarly, language found in our own case law supports the view that the state must first plead the procedural default before the petitioner is required to show cause and prejudice. In *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 652–53 n.1, 751 A.2d 398, cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000), we elected to review the petitioner's constitutional claim, which he did not raise at trial or on direct appeal, because the record was unclear as to whether a claim of procedural default had been brought to the attention of the habeas court.

Our rules of practice also support the view that the state has the burden of pleading procedural default and are instructive on how the defense should be raised. As the habeas court found, and we agree, Practice Book

§ 23-30 (b) requires the state to raise the affirmative defense of procedural default in its return. Section 23-30 (b) clearly states, in pertinent part, that "[t]he return . . . shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief." Accordingly, we conclude that the plain language of Practice Book § 23-30 (b) requires the state to plead procedural default in its return or it will relinquish the right to assert the defense thereafter. See *Phelps* v. *Director, Nevada Dept. of Prisons,* 104 Nev. 656, 659, 764 P.2d 1303 (1988) (holding that state rules of practice require government to assert procedural default as affirmative defense before petitioner is required to show cause and prejudice); *Medley* v. *Warden,* Superior Court, judicial district of Tolland at Somers, Docket No. CV92-0001485 (August 10, 1993) (9 Conn. L. Rptr. 621, 622) (same), aff'd, 35 Conn. App. 374, 646 A.2d 242 (1994), rev'd on other grounds, 235 Conn. 413, 667 A.2d 549 (1995).

We, therefore, are persuaded that in Connecticut, although the petitioner has the burden of proving cause and prejudice; see *Johnson* v. *Commissioner of Correction,* supra, 218 Conn. 419; that burden does not arise until after the respondent raises the claim of procedural default in its return. Accordingly, we conclude that the habeas court properly concluded that the petitioner was not required to prove cause and prejudice because the state had failed to plead the defense of procedural default in its return as mandated by Practice Book § 23-30 (b). Thus, we will address the merits of the petitioner's claims.

II

The petitioner claims that his right to due process was violated when the state failed to conduct timely isoenzyme blood testing on samples taken from the victim's clothing, scrapings from under the victim's fin-

gernails and from blood evidence found at Torres' apartment.[7] The petitioner argues that if the state had conducted those tests while the blood samples were fresh, the results would have excluded the petitioner as a possible suspect. The petitioner concludes that the failure to conduct timely testing effectively amounts to the withholding of potentially exculpatory evidence by the prosecution. Because the results of timely performed isoenzyme tests may not have produced exculpatory evidence, we are unpersuaded that the petitioner's claim presents us with the issue of the failure to produce or preserve potentially exculpatory evidence. We therefore agree with the state that the petitioner's claim mistakenly seeks to place an affirmative obligation on the state to perform particular tests on evidence during its investigation and prosecution of a criminal defendant.

Our standard of review of habeas proceedings is well settled. "[A] habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . ."

---

[7] We note that in his brief, the petitioner makes a blanket allegation that he was denied due process, but has failed to identify any particular constitutional right that was violated by the state's nonperformance of the isoenzyme tests. Furthermore, the petitioner has failed to provide an independent analysis of the state constitutional issues. See *State* v. *Geisler*, 222 Conn. 672, 685, 610 A.2d 1225 (1992) (setting forth appropriate factors to be addressed when raising state constitutional claim). "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . . *State* v. *Robinson*, 227 Conn. 711, 721–22, 631 A.2d 288 (1993); see also *State* v. *Williams*, 231 Conn. 235, 245 n.13, 645 A.2d 999 (1994); *State* v. *Joyner*, 225 Conn. 450, [458–59] n.4, 625 A.2d 791 (1993); *State* v. *Rosado*, 218 Conn. 239, 251 n.12, 588 A.2d 1066 (1991). . . . *State* v. *Ellis*, 232 Conn. 691, 692 n.1, 657 A.2d 1099 (1995)." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999). Therefore, we decide this issue on the more limited grounds of the federal constitution. *State* v. *Geisler*, supra, 684.

(Citation omitted; internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, 61 Conn. App. 55, 58, 762 A.2d 491 (2000); *Morrison* v. *Commissioner of Correction*, 57 Conn. App. 145, 147, 747 A.2d 1058, cert. denied, 253 Conn. 920, 755 A.2d 215 (2000). Whether the petitioner's right to due process of law was violated by the nonproduction of possibly exculpatory material, however, is a mixed question of law and fact that warrants plenary review. *Quintana* v. *Commissioner of Correction*, 55 Conn. App. 426, 436, 739 A.2d 701, cert. denied, 252 Conn. 904, 743 A.2d 614 (1999).

The due process clause of the federal constitution is not violated when the police fail to employ a particular investigatory tool. *Arizona* v. *Youngblood*, 488 U.S. 51, 59, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). "[T]he police do not have a constitutional duty to perform any particular tests." (Internal quotation marks omitted.) *State* v. *Conn*, 234 Conn. 97, 118, 662 A.2d 68 (1995), quoting *Arizona* v. *Youngblood*, supra, 59; see also *Commonwealth* v. *Richenburg*, 401 Mass. 663, 669, 518 N.E.2d 1143 (1988) (failure to perform blood-typing analysis permissible ground on which to build defense, but does not constitute suppression of evidence in violation of due process within doctrine of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 [1963]); *Everroad* v. *State*, 570 N.E.2d 38, 46–47 (Ind. App. 1991) (rejecting claim that failure to test contraband for fingerprints constituted destruction of potentially exculpatory evidence), rev'd on other grounds, 590 N.E.2d 567 (Ind. 1992). Furthermore, the state does not have a federal constitutional obligation to conduct tests at an earlier date only because, in hindsight, there was a mere possibility that such tests may have produced exculpatory material. *State* v. *Conn*, supra, 118–19.

In the present case, we cannot conclude that the petitioner's right to due process under the federal constitution was violated. The habeas court found that the

state conducted ABO type testing on the blood evidence collected during the investigation of the murder. At the murder trial, the petitioner was convicted on the basis of the presentation of strong circumstantial eyewitness testimony. The habeas court further found that, even if the isoenzyme tests had been timely performed, the results may not necessarily have produced exculpatory evidence. Those factual findings by the habeas court are not clearly erroneous. Therefore, considering that the state has no affirmative duty to perform any one particular test on blood evidence and that the performance of isoenzyme tests could possibly have produced inculpatory, rather than exculpatory evidence, the petitioner was not denied due process by the nonperformance of such tests.

Upon our review of the record as a whole, we conclude that the petitioner's right to due process was not violated by the untimely performance of isoenzyme testing on certain blood evidence.

### III

The petitioner finally claims that he was denied his right to effective assistance of counsel pursuant to the federal and Connecticut constitutions because his counsel prevented him from testifying at his criminal trial and failed to apprise him fully of his right to take the witness stand. We disagree.

Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. "Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous stan-

dard." (Citation omitted; internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, supra, 61 Conn. App. 58.

A "criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, supra, 466 U.S. 686. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, supra, 61 Conn. App. 58–59. "In order . . . to prevail on a constitutional claim of ineffective assistance of counsel, [the petitioner] must establish both (1) deficient performance, and (2) actual prejudice." (Internal quotation marks omitted.) Id., 59, quoting *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 445, 610 A.2d 598 (1992). To prove that his counsel's performance was deficient, the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 317, 759 A.2d 118 (2000). Furthermore, the petitioner "must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* v. *Washington*, supra, [694]." (Internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, supra, 59.

In the present case, the habeas court found that the petitioner had failed to meet his burden of satisfying either prong of the *Strickland* test. The court found that the petitioner failed to present credible evidence that his counsel had prevented him from testifying in his own defense. The court further found that, on the

basis of the strength of the state's case, it was reasonably probable that had the petitioner testified on his own behalf, he still would have been convicted. This court cannot conclude that those factual findings are clearly erroneous.

Upon review of the record as a whole, we conclude that the habeas court properly found that the petitioner failed to satisfy his burden of establishing that his trial counsel provided ineffective assistance under the *Strickland* test. We therefore must affirm the judgment of the habeas court.

The judgment is affirmed.

In this opinion the other judges concurred.