[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: HABEAS CORPUS PETITION
Rofio Greenfield (hereafter Petitioner) Has brought this Habeas Corpus Petition (amended April 6, 1998), alleging that he was denied the effective assistance of counsel in violation of the Sixth andFourteenth
Amendments to the Constitution of the United States and Article First CT Page 9092 Section 8 of the Connecticut Constitution in that his trial counsel:
a. Failed to impeach the testimony of Robert Terry, identifying the petitioner as the person who was present at the scene of the crime.
b. Failed to object when the court speculated as to the reasons why the petitioner failed to testify during the trial and subsequently failed to appeal the court's statements during the instructions to the jury.
c. Failed to effectively point out during final arguments to the jury that there were no fingerprints matching those of the defendant found on the crime scene, until an alleged match was made on the eve of trial, long after a prior examination had indicated that there was no match.
d. Failed to point out to the jury during closing arguments that the blood found on the hand of the petitioner was not even determined to be human blood and was not found to match that of the victim of the crime.
e. Failed to paint out to the jury during final arguments that the blood found on the petitioner's sneakers was not determined to have come from the victim.
f. Failed to effectively argue to the jury that the testimony of Dr. Lee was exculpatory in that it indicated that blood spatters were present on the back of the petitioner's jeans.
g. Failed to argue effectively to the jury that the identification of the petitioner by Robert Terry was unreliable since Terry was too far away to make a valid ID and was not wearing his glasses at the time he made the purported identification of the petitioner.
"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. Strickland v. Washington, supra, 466 U.S. 686. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.' Crump v. Commissioner of Correction, supra,61 Conn. App. 58-59." In order . . . to prevail on a constitutional claim of ineffective assistance of counsel, [the petitioner] must establish both (1) deficient performance, and (2) actual prejudice.' (Internal quotation marks omitted.) Id., 59, quoting Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 445, 610 A.2d 598 (1992). To prove that his counsel's performance was deficient, the petitioner must demonstrate that 'counsel's representation fell below an objective standard of reasonableness.' (Internal quotation marks omitted.) Henry v.CT Page 9093Commissioner of Correction, 60 Conn. App. 313, 317, 759 A.2d 118 (2000). Furthermore, the petitioner "must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra, 466 U.S. 694.' Crump v.Commissioner of Correction, supra, 59." Milner v. Commissioner ofCorrection, 63 Conn. App. 726 at 738 (2001)
"The first prong of the Strickland analysis requires a petitioner to establish that his attorney's performance was deficient in that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v.Washington, 466 U.S. 668, 687 (1984). "The proper standard for attorney performance under Strickland is one of reasonably effective assistance." Id. A Petitioner must demonstrate "that counsel's representation fell below an objective standard of reasonableness . . . [as measured by] prevailing professional norms." (Citations omitted; internal quotation marks omitted.) Johnson v. Commissioner of Correction, 218 Conn. 403, 425
(1991); Iovieno v. Commissioner of Corrections, 242 Conn. 689 (1997)
At the outset, it should be noted that the Petitioner did not present a legal expert witness to establish his claim of ineffective assistance of defense counsel nor present a legal expert witness to establish an objective standard of reasonableness, pursuant to Strickland v.Washington. This court assumes that the Petitioner has implicitly suggested that the issues in this case are not sufficiently complex to warrant assistance to the trial court [by a legal expert witness] in sifting through the Petitioner's claims and placing them in a context that would aid this habeas court. It is further implicit in the Petitioner's presentation that the acts complained of are such that the trier of fact will be able to determine whether there has been ineffective assistance of counsel without need of expert testimony.
Therefore, this court will accept the Petitioner's implied invitation to determine whether the Petitioner's claim of ineffective assistance of counsel is meritorious based on this court's ordinary knowledge, legal knowledge, experience, trial tactics and evidence. See Evans v. Warden,29 Conn. App. 274 at 281, 282 (1992)
The first contention of the Petitioner claiming ineffective assistance of counsel is that defense counsel "failed to impeach the testimony at trial of Robert Terry, identifying the petitioner as the person who was present at the scene of the crime." This contention raises the issue of "identification." CT Page 9094
However, defense counsel has adequately explained that this was not a case of identification, misidentification or lack of identification. The Petitioner was identified as being at the crime scene by his own admission to the police, by two fingerprints of the Petitioner inside Mr. Dolphin's apartment, blood evidence, a positive identification by Kenneth Evans, a positive identification entering the building with Mr. Dolphin at 12:30 to 1:00 p.m. on the day of the crime, and further, a positive identification leaving the building later in the day. It is incredible to suggest that Mr. Terry's different testimony at the probable cause hearing and at trial and Mr. Terry's lack of visual acuity could possibly refute Petitioner's presence at the crime scene.
Defense counsel adequately explained that defense counsel adopted a defense theory of sufficiency of evidence, relying on the prospect that the jury would render a not guilty verdict based on a reasonable doubt because the state failed to produce sufficient evidence to convict beyond a reasonable doubt.
Defense counsel further adequately explained that any attempt to refute the presence of the Petitioner at the crime scene would erode the credibility of his case and impair his ability to challenge the sufficiency of the state's case.
This court concludes that the contention of the Petitioner that defense counsel, "[F]ailed to impeach the testimony at trial of Robert Terry, identifying the petitioner as the person who was present at the scene of the crime" wholly fails to support a claim of ineffective assistance of counsel.
The Petitioner next contends defense counsel, "Failed to object when the court speculated as to the reason why the petitioner failed to testify during the trial and subsequently failed to appeal the court's statements during the instructions to the jury."
Specifically, the Petitioner calls into question the following language:
"Now, Mr. Greenfield did not testify in this case, and an accused person is under no obligation to become a witness in his own behalf, nor is he obliged to produce any evidence whatsoever. Under our law, an accused person may testify or not as he sees fit. It's for the State to prove him guilty of the charges and nothing rests upon him in his position. There may be many good and sufficient reasons why the Accused has not testified, such as advice of Counselor."
However, the court continues in its charge as follows: CT Page 9095
"Therefore, you should not allow such fact to enter into your discussions or deliberations, and you, as the jury, should draw no adverse inferences against the Accused merely from his failure to testify."
Connecticut General Statute § 54-84 provides:
"Testimony or silence of accused." (a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall-not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.
(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify . . .
Although the language used by the trial court does not exactly track the language of Connecticut General Statute § 54-84, this court finds that the language used by the trial court conveyed the substantive meaning of statutory requirement.
More specifically, the Petitioner challenges the trial court's language as follows: There may be many good and sufficient reasons why the Accused has not testified, such as advice of Counselor.
Again, this language is not in violation of Connecticut General Statutes § 54-84. This language fortifies the Petitioner's right not to testify and puts a positive slant on such right. In addition, it shifts the focus on such right not to testify from the Petitioner to the defense counsel.
In State v. Tatum, 194 Conn. 594, 599-600 (1994), our Supreme Court, employing a harmless error analysis, held that '[a]n erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury were misled.' (Citations omitted.) "Whether a charge is possibly misleading depends on the substance rather than the form of what is said." State v. Kiernan, 186 Conn. 555, 565 (1982)
This court is not persuaded that it was not reasonably possible that the jury would have understood the court to be permitting any inferences whatsoever to be drawn. The language following the challenged language served to alert the jury to the fact that it was to draw no inference CT Page 9096 whatsoever from the Petitioner's failure to testify.[1] It is axiomatic that "[a]n instruction prohibiting any inference would preclude an unfavorable inference." State v. Marra, 195 Conn. 421, 443 (1985)
This court concludes that the contention of the Petitioner that defense counsel "[F]ailed to object when the court speculated as to the reasons why the petitioner failed to testify during the trial and subsequently failed to appeal the court's statements during the instructions to the jury" wholly fails to support a claim of ineffective assistance of counsel.
The remaining contentions of the Petitioner claiming ineffective assistance of counsel all attack the closing argument by defense counsel. These several contentions are:
c. Failed to effectively point out during final arguments to the jury that there were no fingerprints matching those of the defendant found on the crime scene, until an alleged match was made on the eve of trial, long after a prior examination had indicated that there was no match.
d. Failed to point out to the jury during closing arguments that the blood found on the hand of the petitioner was not even determined to be human blood and was not found to match that, of the victim of the crime.
e. Failed to point out to the jury during final arguments that the blood found on the petitioner's sneakers was not determined to have come from the victim.
f. Failed to effectively argue to the jury that the testimony of Dr. Lee was exculpatory in that it indicated that blood spatters were present on the back of the petitioner's jeans.
g. Failed to argue effectively to the jury that the identification of the petitioner by Robert Terry was unreliable since Terry was too far away to make a valid ID and was not wearing his glasses at the time he made the purported identification of the petitioner.
The habeas court must critically review the closing argument by defense counsel in the context of many factors. Defense counsel must be given wide latitude in determining what is to be said, what is not to be said, and how whatever is said. This is so because defense counsel is in the best position to determine the terms, breadth and scope of closing argument. Defense counsel knows the strengths and weaknesses of its own case. Defense counsel knows the strength and weaknesses of the state's case. Defense counsel has observed the demeanor of witnesses and jurors. CT Page 9097 Defense counsel has observed the introduction of evidence and testimony and how well such evidence and testimony was received, whether it be emphatically received or minimally received. Defense counsel is able to bring together all the evidence supporting its own case and present it in light most favorable to the Petitioner to the jury. Defense counsel is able to present evidence most favorable to the state case in a minimal manner or not at all or to point out inconsistencies in such evidence to the jury.
Of course, closing arguments, as important as they are, are not evidence. A jury should not decide a case on the strength or weakness of closing arguments. This court is entitled to believe that this case was decided by the jury in its consideration of all the evidence in this case.
This court has reviewed the closing argument several times. This court observes that the closing argument was presented in an organized manner and was fluid and not disjunctive. The closing argument developed defense counsel's theory of defense, that of sufficiency of evidence and reasonable doubt. Defense counsel highlighted and pointed out many areas that defense counsel perceived created reasonable doubts, all favorable to the Petitioner. However, defense counsel in closing argument did not attempt to refute the obvious or irrefutable. This court respectfully suggests that when one attempts to refute the obvious or irrefutable, one loses all credence as to his comments. Therefore, defense counsel is in the best position to develop its closing argument.
Paragraph 5c. of the Petitioner's amended petition claims that defense counsel "Failed to effectively point out during final arguments to the jury that there were no fingerprints matching those of the defendant found on the crime scene, until an alleged match was made on the eve of trial, long after a prior examination had indicated that there was no match." Defense counsel was faced with an overabundance of evidence beyond a reasonable doubt including the Petitioner's own admission that he was at the crime scene. It would be counterproductive to point out during closing argument that a match of fingerprints made by a more experienced person was made at the eve of trial. This fact is immaterial. The timing of the match does not affect the accuracy of a match. A match is a match, whenever it is determined. Additionally, the Petitioner was unable to produce any evidence or testimony that would refute or put into question the accuracy of the fingerprint match. Query: Why belabor the timing of the match?
Paragraphs 5d. and 5e. of the Petitioner's amended petition claims that defense counsel "Failed to point out to the jury during closing arguments that the blood found on the hand of the Petitioner was not even CT Page 9098 determined to be human blood and was not found to match that of the victim of the crime" and "Failed to point out to the jury during final arguments that the blood found on the petitioner's sneakers was not determined to have come from the victim." Both these claims involve the serology testimony of Joy Reho.
Paragraph 5d. is a misstatement of the testimony of Joy Reho. Joy Reho testified that swabs taken from the hands of the Petitioner were positive for human blood. (See Transcript, March 26, 1992, page. 30, lines 11-13.) Further, there is no direct positive testimony by Joy Reho that the human blood was not found to match that of the victim of the crime. Because paragraph 5d is a misstatement, this court declines to comment further.
Paragraph 5e. is also a misstatement of the testimony of Joy Reho. Joy Reho testified the blood on the sneakers could not have come from the defendant, since he is blood type A, PGM one plus. It could have come from the victim, since he is blood type O, PGM two plus one plus. (See Transcript, March 26, 1992, page 36, lines 16-19.)
Defense counsel also raised points regarding reasonable doubts regarding blood classifications of both the Petitioner and victim as being nonexclusive rather than exclusive, such as fingerprints.
Paragraph 5f. of the Petitioner's amended petition claims that defense counsel, "Failed to effectively argue to the jury that the testimony of Dr. Lee was exculpatory in that it indicated that blood spatters were present on the back of the petitioner's jeans."
Defense counsel's comments regarding Dr. Lee's testimony puts his testimony in serious doubt and confusion and could reasonably be a basis for reasonable doubt. Although the comments of defense counsel regarding Dr. Lee's testimony did not include the word "exculpatory," these comments were extensive and critical.
Paragraph 5g. of the Petitioner's amended petition claims that defense counsel, "Failed to argue effectively to the jury that the identification of the petitioner by Robert Terry was unreliable since Terry was too far away to make a valid ID and was not wearing his glasses at the time he made the purported identification of the petitioner."
This claim has been thoroughly discussed by the court. Therefore, this court declines to comment further except to point out that defense counsel did mention that Mr. Terry was not wearing glasses during one occasion when he identified the Petitioner. (See Transcript, April 2, 1992, page 83, lines 7-23.) CT Page 9099
The Petitioner's claims in paragraphs 5c., 5f. and 5g. puts into question the "effectiveness" of defense counsel's closing argument as regards certain contentions. "Effectiveness" is a subjective noun. How does one determine "effectiveness"? Is it by results? Can one have an "effective" argument yet not prevail in the final analysis? Does one have to read the minds of the jury in this case to determine effectiveness? The Petitioner, in effect, asks this court to conclude that defense counsel's argument was not "effective" because the jury found the Petitioner guilty. This is not a logical conclusion. Further, such a conclusion would usurp the function of the jury, and this court declines to do so. It may not substitute its judgment for that of the jury.
Paragraphs 5c., 5d., 5e., 5f. and 5g. wholly fail to support a claim of ineffective assistance of counsel.
The second prong of the Strickland analysis requires a Petitioner to establish actual prejudice. The [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 693-694.
The Petitioner was convicted based on the evidence in this case including evidence placing the Petitioner at the crime scene (including Petitioner's own admission), blood analysis including blood on the Petitioner's person and clothing, testimony from the medical examiner, testimony of forensic scientists and testimony from police officers. The Petitioner was convicted based on the totality and sufficiency of the evidence by the jury. The Petitioner was not convicted due to the ineffectiveness of counsel.
This court concludes that the assistance of counsel rendered by defense counsel was not ineffective pursuant to the first prong of Strickland v.Washington. This court also concludes that the Petitioner has failed to establish actual prejudice pursuant to the second prong of Strickland v.Washington. This court finds there is no reasonable probability that . . . the results of this proceeding would have been different.
The Petitioner's habeas corpus petition is denied.
The Court
 By____________________ MORAN, JUDGE