[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Albert Stephens (hereinafter "Petitioner") has brought, through counsel, an amended petition for a writ of habeas corpus dated June 15, 2001 claiming in Count One that the attorney who represented him at trial was ineffective, in Count Two that the State failed to produce a handgun, which was in the possession of the Petitioner when he was arrested in Philadelphia, Pennsylvania, and, therefore, the Petitioner was deprived of his right of confrontation, and Count Three claiming that the Petitioner's rights, including his right to a speedy trial, were violated. Trial was held before this Court on December 4, 2001 at which time the Petitioner withdrew Count Three as to his speedy trial claim. In the return of the Respondent (hereinafter also the "Warden") dated August 31, 2001, he filed a special defense as to Count Two and Count Three that the Petitioner's direct appeal to the State Supreme Court, State v.Albert Stephens, 249 Conn. 288 did not raise the allegations in Counts Two and Three and, therefore, the Petitioner procedurally defaulted on these two counts. As for the special defense to Count Two, Johnson v.Commissioner, 218 Conn. 403, 412-13 (1991) has established the "cause and prejudice requirement" which, in effect, states that the habeas court should not entertain claims which should have been raised on direct appeal unless the Petitioner demonstrates good cause for the failure to preserve the claim at trial and actual prejudice resulting from the alleged constitutional violation. Further, it is the Petitioner's burden of proof to establish the cause and prejudice. The Respondent has raised the claim of procedural default in his Special Defenses. Therefore, the CT Page 16499 burden of proving cause and prejudice is still on the Petitioner. Milnerv. Commissioner of Correction, 63 Conn. App. 726, 734 (2001).
In Count Three, the Petitioner claims that his attorney did not preserve issues for appeal and makes reference to State v. Stephens, supra. A review of State v. Stephens reveals Petitioner's claim there that the trial court improperly omitted the factual commentary contained in its oral charge to the jury from the written instructions it provided to the jury for its use during deliberations; and that the trial court improperly instructed the jury on the concept of reasonable doubt. Further, the Petitioner, in his testimony before this Court, claimed that his trial attorney, Attorney Jeffrey Hutcoe (hereinafter "Hutcoe") never objected to any portion of the charge by Spada, J., the trial court judge. The Supreme Court recognized neither of these claims was preserved properly at trial and that even though the Petitioner claimed that the court could take up these claims under the principle in State v.Golding, 213 Conn. 233 (1989), the Supreme Court held that under Golding
". . . a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: . . . (2) the claim is of constitutional magnitude alleging the violation of a fundamental right. . . ." The court further stated on page 290 "In the present case, the defendant has failed to meet the second prong ofGolding because his claims of instructional impropriety are not of constitutional magnitude". In that appeal, Petitioner also claimed that the Supreme Court could review his claims under the plain error doctrine, but the Supreme Court concluded that the first claim of the defendant did not meet the standard of plain error. This Court has reviewed Judge Spada's charge and does not find any of it in error. This Court knows of no requirement that what is stated about the facts in the oral charge has to be contained in the copy of the written charge which is given, at the discretion of the trial judge, to the jurors for use in their deliberations. There is nothing wrong in the charge oral and/or written given by Judge Spada. In addition the failure to preserve these issues for appeal comes under the claim in Count Two of ineffective assistance of counsel. Accordingly, the Court sustains the special defenses of the Respondent as to Counts Two and Three but will address these issues further as to Count One which is a claim of ineffective assistance of counsel.
 INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
It is well-settled law that there are two prongs of the holding inStrickland v. Washington, 466 U.S. 668, 687 (1984) that the Petitioner must prove. The first prong is that trial counsel was ineffective, and the second prong is that if counsel had not been ineffective, the result of the trial would probably be different. The Court will address each of CT Page 16500 the claims brought forth by the Petitioner during his testimony and in his First Count. First, however, the following is a summary of the facts which were presented to the jury as described by the Supreme Court inState v. Stephens, Id. 289:
"At approximately 11:15 p.m. on April 30, 1993, the defendant became involved in a heated argument with the victim, Bernie Countryman[1], outside of the City's Edge Nightclub in Hartford. Both the victim and the defendant were armed with handguns. At some point during the argument, the defendant killed the victim by shooting him in the back of the head. The defendant then fled the scene in a white Honda and subsequently traveled to Philadelphia, where he lived using an assumed name for two years."
It should be also noted that this Court bases part of its decision on the credibility of the witnesses and that is based upon its observation of their demeanor on the witness stand, their ability to remember or not remember certain facts, the consistency or inconsistency of their testimony and the consistency or inconsistency of their testimony with other evidence including other testimony, any bias or prejudice demonstrated by the witness, their interest in the outcome of the case, etc.
1. A witness for the State, Vincent Motley, testified at the trial that he had a conversation two days before the shooting with the Petitioner while the Petitioner had stopped his automobile at the corner of Main and Westland Streets in Hartford to make a telephone call at a pay phone while he was sitting in the driver's seat. At that point Vincent Motley drove up, and as he related the conversation, the Petitioner said that he was looking for Pookie, and when he found him he was going to ". . . kill his ass." Petitioner, in his testimony in this Court, vigorously disputed that and stated that an individual by the name of Elisha (sic) Gunn was seated in his vehicle in the passenger front seat and that several times before the probable cause hearing and after the probable cause hearing but before the trial, the Petitioner told Hutcoe the name of Elisha Gunn and that he, the Petitioner, wanted her to testify to refute what Vincent Motley said. Petitioner and his counsel knew before the probable cause hearing that to which Vincent Motley would testify because of the availability to them of the statement Vincent Motley gave to the police and, of course, were aware of Vincent Motley's testimony at the probable cause hearing and, therefore, knew what he was going to say at the trial. Petitioner claims that he told Hutcoe of Elisha Gunn's telephone number and that she resided on Plainfield Street in Hartford. Hutcoe claimed in his testimony before this Court that Elisha Gunn's name was never mentioned to him nor was he ever given an address or a telephone number. This Court finds it difficult to believe that Hutcoe would not CT Page 16501 have investigated or tried to find Elisha Gunn if he had in fact been told about her by the Petitioner. Also, Hutcoe claimed that he is not sure whether he would have called her to testify because he was able to get Vincent Motley to admit that he never took this threat seriously. Hutcoe also brought out at the times of Vincent Motley's testimony that he, Motley, never mentioned that conversation until two weeks after the death of Countryman. Whether to call Elisha Gunn to testify if he had found her was a matter of trial tactics with which this Court cannot quarrel.
2. Petitioner's second claim is that he told Hutcoe that he had a 9-mm gun with him when he was arrested on a fugitive warrant in Philadelphia, and he wanted Hutcoe to obtain the gun from the Philadelphia police so it could be compared with the 9-mm bullets found in the victim's body. The arrest in Philadelphia on October 27, 1994 was approximately 18 months following the shooting in Hartford. Petitioner claims that he never told Hutcoe that the gun found in Philadelphia was not the same 9-mm gun he had at the time of the shooting. Petitioner, during Hutcoe's testimony, got very upset and called Hutcoe a liar when Hutcoe testified that the Petitioner had told him it was not the same gun. What is interesting about this is that when the Petitioner testified in rebuttal, he never brought up this subject again. As upset as he was during Hutcoe's testimony on this subject, when the Petitioner returned to the stand in rebuttal he did not even mention that Hutcoe had not told the truth. It was only after he stepped down that the Court asked the Petitioner whether he still disputed Hutcoe's statement, to which the Petitioner replied in the affirmative. If it was such a sharp issue in dispute, the Court does not understand why the Petitioner did not raise it in his rebuttal testimony. The Court concludes, however, that Hutcoe was not ineffective in not obtaining the gun from Philadelphia because the gun was seized from the Petitioner 18 months after the shooting, and there was no way the defense could prove that it was the same gun without the testimony of the Petitioner whose credibility would have been seriously impeached if he had testified because of his prior record for assault with a gun. Even if the Petitioner's memory was correct that he had never told Hutcoe it was not the same gun, there would be no benefit to have Hutcoe obtain the gun because it would not in any way have helped the Petitioner.
3. Hutcoe testified that he never objected to Judge Spada's charge because he believed what Judge Spada said in his charge was beneficial to the Petitioner and not harmful to him. This Court agrees with that assessment after having read the charge.
4. Petitioner claims that Troy Moody, another prisoner in lockup with him before the trial, told him that Patrick Garvey who was the driver of CT Page 16502 the vehicle that took the Petitioner to the City's Edge Café had told Moody that he, Garvey, killed the victim by accident. Garvey was also the driver of the white car that left the scene immediately after the shooting. Petitioner claims he told this to Hutcoe, and Hutcoe did not investigate this claim. Hutcoe testified that he had never heard of Troy Moody, which was in direct contravention to what the Petitioner claimed. However, Patrick Garvey was never located. The only information which Hutcoe had was Petitioner's comment that he thought that Garvey was somewhere in Florida. Without Garvey's testimony, presuming he would admit that he shot the victim accidentally, which is a big presumption, there would be no merit to producing Troy Moody as a witness. His testimony as to what Garvey told him would have been excluded as hearsay. It might have been admitted for the purpose of showing Troy Moody's reaction, but it could not have been admitted for the truth of Garvey's statement. Without Garvey's presence and without his favorable testimony, there would have been no reason for Hutcoe to talk to Troy Moody assuming that he had been told of Troy Moody by the Petitioner.
5. Petitioner claims that he wanted to testify but went along with Hutcoe's recommendation that he not testify because of his prior criminal record. Judge Spada advised the Petitioner extensively that he could testify even if his attorney advised him not to testify. Despite that, the Petitioner chose not to testify. Since it was the Petitioner's decision, Hutcoe could hardly be faulted for the Petitioner not testifying, and because of the prior record, this Court believes that Hutcoe's recommendation not to testify was correct.
For all of the above reasons this Court finds that Hutcoe's representation of the Petitioner was not ineffective, and that the Petitioner has failed to sustain his burden of proving that Hutcoe's conduct in his representation of the Petitioner fell below the standard of reasonable competence in the criminal law.
 SECOND PRONG OF STRICKLAND
This Court concludes that even if Hutcoe was ineffective, it is not likely that such ineffectiveness would have changed the outcome of the trial. The second prong of Strickland requires that the Petitioner show that if it were not for counsel's ineffectiveness, the outcome of the trial would probably have been different. There was substantial evidence to support the Petitioner's conviction. Several witnesses testified that the Petitioner and the victim were wrestling with each other in a heated argument, that only two guns were seen by the witnesses, namely the gun of the Petitioner and the 22 calibre gun of the victim. Evidence showed that the victim's gun had not be fired and that the bullets were not 22 calibre so the only logical conclusion was that it was the Petitioner's CT Page 16503 gun that was used to shoot the victim.[2] The Petitioner then fled the jurisdiction and used a different name which shows consciousness of guilt. It may well be that Shase Ricks was in the car with Patrick Garvey and was near the Petitioner and the victim at the time of the argument and could have shot the victim, and it could be that Patrick Garvey shot the victim. However, there was no credible evidence to prove that. No other guns were recovered. Hutcoe used the third party culpability theory, either Ricks or Garvey as the shooter, as best as could be done. Suffice it to say however, that there was sufficient evidence to convict the defendant even if Hutcoe had not committed the errors claimed by the Petitioner. It is highly unlikely the outcome of the trial would have been different. Accordingly, the plaintiff has failed to prove the second prong of Strickland.
Based upon the foregoing, the petition for a writ of habeas corpus is DENIED.
Rittenband, JTR