[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The plaintiff, Na-Mor, Inc., appeals from the final decision of the defendant Department of Public Health ("the department") affirming the department's orders requiring the plaintiff to perform certain water CT Page 1134 testing, reporting, and notification concerning a public water system that the department found the plaintiff owns in Harwinton. For the following reasons, the court finds no error in the agency proceedings and dismisses this appeal.
BACKGROUND
The administrative record reveals the following facts. The plaintiff is a Delaware corporation that owns a seven to eight acre property in Harwinton. The property contains three wells that supply water to three apartment buildings on the property known as the Garden Lane apartments. (Return of Record ("ROR"), Vol. 1, p. 3 ¶¶ 1, 3.)[1]
On November 24, 1998, after an investigation and prior notice, the department issued four notices of violations and civil penalties for failure to perform certain water testing, monitoring, and reporting. (ROR, Vol. 1, p. 4 ¶¶ 7-10.) The plaintiff also failed to perform the required water quality monitoring for 1999 and 2000, despite numerous attempts to bring the plaintiff into compliance. (ROR, Vol. 1, p. 4 ¶ 20; p. 13.) On February 9, 2001, the department issued another order to the plaintiff based on its finding that the plaintiff's water system presented an immediate threat to the quality or adequacy of the water supplied. (ROR, Vol. 1, pp. 4, 13.) The order required the plaintiff to perform certain water testing, monitor the quality of its water and report the results to the department, comply with public notification requirements, provide an integrated map of the system, correct certain items in the department's May, 2000 inspection report, and provide the department with a completed annual public water statement. (ROR, Vol. 1, pp. 2, 14.)
The plaintiff challenged the 2001 order and a hearing took place before a hearing officer of the department. The plaintiff argued that: 1) it did not operate a public or community water system and was not subject to the department's jurisdiction, and 2) it did not receive any notice or correspondence from the department. (ROR, Vol. 1, pp. 2, 5-6.) In a final decision rendered on February 26, 2001, the hearing officer rejected these claims. The hearing officer found that the plaintiff does operate a public water system because it supplied water to the requisite number of persons as determined by a concept known as "Design Population." (ROR, Vol. 1, pp. 6-7.) In response to the second claim, the hearing officer found that Robert Dziurgot, the president of the plaintiff corporation, did receive the notices and correspondence sent by the department. The hearing officer stated:
 [T]he entirety of [the plaintiff's] claims are merely proof of Mr. Dziurgot's pattern and practice of CT Page 1135 seeking to avoid financial responsibility by avoiding receipt of documents that would require expenditure of funds. Further, and particularly disturbing to the Hearing Officer, the administrative record is also replete with so many inconsistencies, misrepresentations, and fabrications as to render the majority of Mr. Dziurgot's testimony wholly unreliable, incredulous, and largely fabricated.
 The Hearing Officer finds that, if respondent failed to receive any correspondence or documents from the Department, including the Notices, it was solely as a result of Mr. Dziurgot's avoidance of such receipt.
(Footnote omitted.) (ROR, Vol. 1, pp. 8-9.)
The plaintiff has appealed.
DISCUSSION
 I
The court first sets forth the standard of review governing administrative appeals. Under the Uniform Administrative Procedure Act ("UAPA"), General Statutes § 4-166 et seq., judicial review of an agency decision is very restricted. See MacDermid, Inc. v. Department ofEnvironmental Protection, 257 Conn. 128, 136-37, 778 A.2d 7 (2001). Section 4-183 (j) of the General Statutes provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Stated differently, "[j]udicial review of an administrative agency CT Page 1136 decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotations omitted.) Schallenkamp v. DelPonte,229 Conn. 31, 40, 639 A.2d 1018 (1994). "It is fundamental that a plaintiff has the burden of proving that the [agency], on the facts before [it], acted contrary to law and in abuse of [its] discretion. . . ." (Internal quotation marks omitted). Murphy v. Commissioner of MotorVehicles, 254 Conn. 333, 343, 757 A.2d 561 (2000).
 II
The plaintiff raises four claims on appeal. The first alleges that § 16-262m-8 of the Regulations of Connecticut State Agencies, which defines "Design Population," effects an unconstitutional taking of property and otherwise violates due process. The plaintiff, however, does not quote or even cite the constitutional provision to which it refers, does not discuss or cite any case law on the takings or due process clauses, and provides no other analysis of its constitutional claim. This approach demeans our constitution by suggesting that it prohibits government action based merely on a litigants's say so. The plaintiff's failure adequately to brief its constitutional claim compels the conclusion that the plaintiff has abandoned it. See Milner v.Commissioner of Correction, 63 Conn. App. 726, 739 n. 7, 779 A.2d 156
(2001); Merchant v. State Ethics Commission, 53 Conn. App. 808, 818,733 A.2d 787 (1999).
 III
The plaintiff next argues that the hearing officer failed to consider evidence of the size of the apartments and rental policy of the landlord in deciding that the plaintiff was a public and community water system. In order to assess this argument, the court must first review the statutory and regulatory scheme. Pursuant to General Statutes § 25-32
(a), the department has jurisdiction over:
 all matters concerning the purity and adequacy of any water supply source used by any municipality, public institution or water company for obtaining water, the safety of any distributing plant and system for public health purposes, the adequacy of methods used to assure water purity, and such other matters relating to the construction and operation of such distributing plant and system as may affect public health.
As it pertains to this case, a "water company" means: CT Page 1137
 any individual, partnership, association, corporation, municipality or other entity, or the lessee thereof, who or which owns, maintains, operates, manages, controls, or employs any pond, lake, reservoir, well, stream or distributing plant or system that supplies water to two or more consumers or to twenty-five or more persons on a regular basis. . . .
General Statutes § 25-32a. Pursuant to General Statutes § 25-32g, the Commissioner of Public Health has authority to order any person causing or engaging in any conduct or activity that violates the statutes and regulations under the department's jurisdiction to "discontinue, abate, alleviate or correct such condition or activity." Among those regulations are requirements that "public water systems" conduct various water quality tests on a defined schedule. See Regs., Conn. State Agencies § 19-13-B102 (c).
Section 19-13-B102 (a) (51) of the Regulations defines a "public water system" as:
 any water company supplying water to fifteen (15) or more consumers or twenty-five (25) or more persons, based on the "Design Population" as defined in Section 16-262m-8 (a)(3) of the regulations of Connecticut State Agencies, jointly administered by the department and the Department of Public Utility Control, daily at least sixty days (60) of the year.
In turn, section 16-262m-8 (a)(3) of the Regulations provides, in pertinent part:
 "Design Population" shall mean the estimated number of people per service connection, calculated as follows, unless specific circumstances dictate otherwise:
Type of service Design Population Per Service Connection
. . .
 Multi-dwelling (i.e. apartments, elderly housing, duplexes, townhouses and residential condominiums One bedroom unit 2 Two bedroom unit 3 CT Page 1138 Three bedroom unit 4 (over 3 bedrooms add 1 person per additional bedroom)
The hearing officer found that the Garden Lane apartments contained eight two bedroom units and four one bedroom units rented to residential tenants for more than sixty days per year on a regular basis. (ROR, Vol. 1, p. 3 ¶ 3.) Applying the Design Population criteria set out above for one and two bedroom units, the hearing officer calculated that the plaintiff's water system serves thirty-two persons. (ROR, Vol. 1, p. 6.) Because this number exceeds the minimum of twenty-five persons needed to satisfy the definition of "public water system" in § 19-13-B102 (a) (51) of the Regulations, the hearing officer concluded that the plaintiff operates a "public water system" within the meaning of that regulation. (ROR, Vol. 1, pp. 6-7.)[2]
The plaintiff challenges this conclusion with evidence that it does not rent its twelve apartments to more than a total of twenty persons. The short answer to this argument is that the regulations expressly define "public water system" in terms of the Design Population estimate rather than the actual number of people living in a particular dwelling. The regulatory scheme is no different than if the definition of "public water system" specifically included apartment complexes containing eight two-bedroom apartments and four one-bedroom apartments. The fact that the regulations accomplish this result indirectly, by referring to the regulation defining "Design Population," rather than doing it directly is of no legal significance.
Noting that, under the regulation, the Design Population estimate does not apply if "specific circumstances dictate otherwise," the plaintiff also contends that the evidence showing that it rents to fewer than twenty-five persons and that the apartments are small in size constitutes such a "specific circumstance." The hearing officer found that "[t]here are no local restrictions that limit occupancy of the property to less than twenty-five persons." (ROR, Vol. 1, p. 5 ¶ 23.) The implication of this finding is that such a municipal restriction would qualify as a "specific circumstance" because an owner could not then legally supply water to twenty-five or more persons on a regular basis. In contrast, in the present case, as the hearing officer found, "there is no legal impediment to [the plaintiff] or a successor in interest renting the units to more than [the plaintiff's] current policy purportedly permits." (ROR, Vol. 1, p. 7.) The hearing officer thus concluded that the size of the apartments does not, in itself, preclude application of the Design Population. (ROR, Vol. 1, p. 7.)
The plaintiff essentially argues for a subjective interpretation of CT Page 1139 "specific circumstances" that would allow the maximum number of persons using a water supply to be identified by the property owner. In contrast, the department appears to rely on standards set by a municipality or some other neutral source. The department's approach is far more objective. This court gives deference to an agency's interpretation of its own regulations. See Griffin Hospital v. Commissionon Hospitals Health Care, 200 Conn. 489, 496-97, 512 A.2d 199 (1986). Giving the appropriate deference, the court readily finds that the department's application of the "specific circumstances" exception to the case is reasonable.
 IV
The plaintiff next contends that the hearing officer erroneously relied on Exhibits DD-3 and DD-10 which, according to the plaintiff contain a sketch and description of Garden Lane apartments that include property not owned by the plaintiff. The plaintiff, however, fails to show that the hearing officer actually relied on this allegedly inaccurate information or that the plaintiff was harmed by any such reliance.
Exhibit DD consists of eleven pages numbered DD-1 through DD-11. (ROR, Vol. 1, pp. 117-27.) The plaintiff's brief does not identify where in the final decision the hearing officer relies on the portions of Exhibits DD-3 and DD-10 in question. An independent review by this court reveals that, on three occasions, the hearing officer cited to Exhibit DD generally. (ROR, Vo. 1, p. 3 ¶¶ 3, 4; p. 5 ¶ 19.) On no occasion, however, did the hearing officer cite specifically to Exhibits DD-3 and DD-10 or to the portions of those documents that the plaintiff challenges.
It further appears that any conceivable reliance on the allegedly inaccurate property descriptions did not harm the plaintiff. The critical issue was what apartment buildings belonged to the plaintiff for purposes of calculating the Design Population estimate. Even if the exhibits in question erroneously suggested that the plaintiff owned some property that it did not own, the plaintiff does not and cannot dispute the hearing officer's finding that the plaintiff did own two apartment buildings containing a total of eight two bedroom apartments and one building containing four one-bedroom apartments. (ROR, Vol. 1, p. 3 ¶ 3.) This undisputed finding, as discussed, allowed the hearing officer to conclude that, under the Design Population, there were thirty-two residents of the apartments and that the plaintiff therefore operated a public water system. The plaintiff, therefore, cannot meet its burden of showing that any error by the hearing officer affected its substantial rights. CT Page 1140
 V
Finally, the plaintiff claims that the department made an improper ex parte communication with the commissioner to request the orders at issue in this case. The plaintiff has not briefed this issue adequately in that the plaintiff has failed to identify any ex parte communication, or even any evidence of such, in the record. This court therefore considers the issue abandoned. See Merchant v. State Ethics Commission, supra,53 Conn. App. 818.
Further, even the plaintiff's allegations do not fit within the statute barring ex parte communications. General Statutes § 4-181 (a) provides:
 Unless required for the disposition of ex parte matters authorized by law, no hearing officer or member of an agency who, in a contested case, is to render a final decision or to make a proposed final decision shall communicate, directly or indirectly, in connection with any issue of fact, with any person or party, or, in connection with any issue of law, with any party or the party's representative, without notice and opportunity for all parties to participate.
The plain language of the statute bars ex parte communications between a hearing officer or other decision-maker in a contested case and a party or the party's representative. See New England Rehabilitation Hospital ofHartford, Inc. v. Commission on Hospitals Health Care, 226 Conn. 105,147-148, 627 A.2d 1257 (1993). The statute does not prevent employees or representatives of an agency from communicating with their agency head about whether to initiate an enforcement action that might later trigger a contested case. Indeed, such a prohibition would prevent commissioners and other agency heads from getting the advice essential to making appropriate executive decisions. The plaintiff's position is thus wholly without merit.
CONCLUSION
The plaintiff having failed to sustain the grounds for his appeal, the appeal is dismissed. The stay previously entered by this court is vacated, effective twenty days from the date of this decision and subject to the provisions of Practice Book § 61-12.
____________________ Carl J. Schuman CT Page 1141 Judge, Superior Court