### BEVERLY WILKES *v.* LAWRENCE WILKES
### (AC 16904)

O'Connell, C. J., and Foti and Spear, Js.

Argued December 2, 1998—officially released October 19, 1999

*William H. Narwold*, with whom were *John P. Ekberg III* and, on the brief, *Charles D. Ray* and *John P. McKinney*, for the appellant-appellee (plaintiff).

*Mary Ellen Wynn,* with whom was *Leah Pavetti Hogan,* for the appellee-appellant (defendant).

*Opinion*

SPEAR, J. The plaintiff, Beverly Wilkes, appeals from the judgment of the trial court that dissolved her marriage to the defendant, Lawrence Wilkes, and awarded her alimony. She claims that the trial court improperly (1) based the alimony award on clearly erroneous factual conclusions regarding the earning capacities of the parties, (2) approved an agreement that equally divided the parties' property even though the defendant had not made a full and frank disclosure of all his assets, (3) concluded that the plaintiff did not contribute to the defendant's assets after the parties separated, (4) excluded critical testimony relating to the defendant's marital infidelity and (5) denied her motion to open the original judgment of dissolution, which was based on the alleged fraud of the defendant.[1] We affirm the judgment of the trial court.

The trial court found the following facts. The parties were married on October 9, 1976, in Palm Beach, Florida. No children were born of the marriage. The defendant was a successful stockbroker who, at the time of the dissolution, was a senior vice president at a securities firm. The plaintiff was an attorney who had enjoyed a successful career working primarily in the field of commodities trading. At the time of the dissolution, the plaintiff had ceased practicing law in New York and had moved to Florida, where she had started a horse boarding business in October, 1994.

---

[1] After the plaintiff appealed from the judgment of dissolution, she filed a motion in the trial court to open that judgment on the basis of the alleged fraud of the defendant with respect to the agreement to divide the property of the parties. The trial court denied that motion and the plaintiff filed an amended appeal claiming that the denial of the motion to open was improper.

In October or November, 1992, the plaintiff visited the defendant's office and demanded that either he terminate the employment of his female sales assistant or she would seek a divorce. After refusing to fire his assistant, the defendant asked the plaintiff for a divorce. Thereupon, the plaintiff suggested that neither party hire an attorney because she would prepare a separation agreement and thereafter commence a dissolution action. Together, the parties visited their certified public accountant to review a division of their assets and to ascertain the resulting tax consequences. Pursuant to their agreement, the parties divided their assets equally. Thereafter, the parties executed an agreement, effective as of June 1, 1993, that reflected the division of the parties' property and was to be used in the dissolution action.

The trial court found the agreement to be fair and equitable and incorporated it in the dissolution decree. The court dissolved the marriage, awarded the plaintiff $150,000 in counsel fees[2] and ordered periodic alimony in the amount of $8500 monthly to terminate "on the remarriage of the plaintiff, the death of either party, or further court order whether based on [General Statutes § 46b-86] or upon the expiration of six years, in all events despite any change of circumstances." This appeal followed.

I

The plaintiff first claims that the trial court's findings regarding the earning capacities of the parties were clearly erroneous because (1) the court relied on financial information from the defendant that was one year old at the time of trial, (2) concluded that the defendant's earning capacity was $515,000 per year despite

---

[2] The plaintiff was represented by an attorney at the time of the dissolution trial.

evidence showing a substantially higher earning capacity and (3) failed to specify the plaintiff's earning capacity. We disagree.

"Our standard of review is well settled. We review financial awards in dissolution actions under an abuse of discretion standard. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Lake* v. *Lake*, 49 Conn. App. 89, 91, 712 A.2d 989, cert. denied, 246 Conn. 902, 719 A.2d 1166 (1998). "[T]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Rolla* v. *Rolla*, 48 Conn. App. 732, 737, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998).

Although the plaintiff claims that the trial court's factual findings that underpin the award of alimony are clearly erroneous, she does not challenge the award itself as an abuse of the trial court's discretion. She fails to assert or brief that any prejudice or harm at all flowed from the allegedly flawed factual findings.

The plaintiff complains that there is "no internal consistency in the trial court's memorandum of decision and no explanation of how the trial court arrived at its

determination of the parties' respective earning capacities."[3] The plaintiff cites *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 479 A.2d 826 (1984), for the proposition that "where a decision suffers from such internal problems, the court's financial awards must be reversed." In *Ehrenkranz*, the defendant claimed that "in arriving at its decision, the court made a serious error in computation which, under the circumstances of this case, amounted to an abuse of discretion." Id., 417. We agreed and reversed the judgment. That case is of no avail to the plaintiff here because, unlike the appellant in *Ehrenkranz*, she neither asserts nor briefs any claim that the trial court abused its discretion. Absent any challenge at all to the amount or term of the alimony award, we have no basis to conclude that the claimed erroneous fact-finding resulted in an abuse of discretion.[4]

---

[3] The trial court denied the plaintiff's request to further articulate the basis for its conclusion as to the earning capacities of the parties. We granted the plaintiff's motion for review of that denial but denied the requested relief.

[4] To the extent that merely citing *Ehrenkranz* could conceivably be viewed as a claim that the trial court's erroneous fact-finding disturbed the delicate mosaic of the financial orders and requires reversal and a new hearing, such a claim is without merit. The trial court pointed to evidence submitted by the plaintiff as part of its basis for finding that the defendant had an earning capacity of $515,000 per year. As the trial court also found that the delay between the execution of the separation agreement and the filing of the dissolution action was solely the plaintiff's fault and further found that the plaintiff did not contribute to the defendant's assets after the separation, the court did not abuse its discretion in relying, at least in part, on the defendant's 1995 income. The plaintiff's main contention is that the trial court failed to consider properly the stock distribution plan of the defendant's employer. The trial court considered the plan and noted that through June, 1996, $292,283 of the defendant's total compensation of $485,000 was due to the plan. There also was evidence that the plaintiff took away her brokerage account from the defendant and influenced a friend, whose account totaled twelve million to fifteen million dollars, to do likewise. The court was not required to find that the defendant's high level of earnings would have continued for the rest of 1996, especially where there was evidence that indicated the contrary. As to the claim that the trial court did not specify an earning capacity for the plaintiff, the trial court found that her earning capacity at the time that she decided to stop practicing law was well established. Even if the trial court had found that the plaintiff's annual earning

## II

The plaintiff next claims that the trial court improperly incorporated the June 1, 1993 separation agreement into the decree of dissolution because the defendant did not make a full disclosure of his assets, thereby rendering the agreement unfair and fraudulent. We disagree.

Resolution of this claim requires us to state certain additional facts. The plaintiff claims that the agreement was induced by fraud because the lack of formal financial affidavits meant that there was no full disclosure of assets by the defendant. She does not identify any undisclosed assets or income. The trial court found that "[t]he plaintiff examined the defendant's records at his office, he gave her copies of all documents and records she requested and he had a reasonable basis to assume she was acting on his behalf." The court went on to state that it was "satisfied that the parties did know the nature and value of their respective IRAs and other tax-deferred compensation, and that the values were roughly equal at the time the parties' assets were divided. It would be most inequitable to allow the plaintiff to retain the benefits of the agreement, which she prepared and which she now seeks to void." Moreover, in the body of the agreement, the parties represented that "each has fully and completely disclosed his or her income, assets and liabilities to the other party, and that neither he nor she is holding any undisclosed assets."

The plaintiff claims that this "mid-nuptial" agreement should be considered the same as premarital agreements that are protected by General Statutes

capacity in the horse business was twenty thousand to twenty-five thousand dollars, as the plaintiff claims, there is no claim that she was entitled to more alimony. This is especially telling in view of the trial court's observation that, in 1995, the plaintiff listed her monthly income from capital gains at $45,700. On a yearly basis that would amount to $548,400.

§ 46b-36g with respect to disclosure. Section 46b-36g (a) (3), which is applicable to premarital agreements executed on or after October 1, 1995, the effective date of Public Acts 1995, No. 95-170, precludes enforcement of a premarital agreement where, prior to execution, a party is "not provided a fair and reasonable disclosure of the amount, character and value of property, financial obligations and income of the other party . . . ." The plaintiff asserts that, even if § 46b-36g does not apply, the agreement was not fair and equitable as required by General Statutes § 46b-66.[5] There is no merit to this claim because § 46b-36g (a) (3) requires "fair and reasonable disclosure," as opposed to more formal financial affidavits, and the trial court had the benefit of formal financial affidavits at the time it decided that the agreement was fair and equitable.

The trial court specifically found that the plaintiff was not credible with respect to her claim that she was not qualified to draft the agreement and that she was under extreme emotional stress when the assets were divided. In drafting the property agreement, the plaintiff received forms and assistance from her mother, who was an attorney licensed in Massachusetts with an "emphasis on matrimonial law in her practice." The court also noted: "Her recognized expertise in drafting complicated derivative agreements belies this claim." We are satisfied that the trial court, in reviewing all of the circumstances, properly found the agreement to be fair and equitable.

## III

The plaintiff next claims that the trial court improperly concluded that she did not contribute to the defendant's assets after the separation occurred and that, as

[5] General Statutes § 46b-66 provides in relevant part: "In any case . . . where the parties have submitted to the court an agreement concerning . . . the disposition of property, the court shall inquire . . . whether the agreement . . . is fair and equitable under all the circumstances. . . ."

a result, the court failed to value the marital property as of the date of dissolution. The plaintiff claims that she referred accounts to the defendant from the time of the separation until well into 1996, and that those referrals made significant contributions to the defendant's business. In addition, the plaintiff maintained her own brokerage account with the defendant.

The trial court did not explain the basis for its conclusion that neither party contributed to the assets of the other after the separation. As a result of that conclusion, the court further concluded that it was equitable to allow the division of assets to stand, citing *Papageorge* v. *Papageorge*, 12 Conn. App. 596, 600, 533 A.2d 229 (1987). The plaintiff did not request an articulation from the trial court on that issue and, therefore, the record is inadequate to review the plaintiff's claim that the court's fact-finding was clearly erroneous. See *In re Bruce R.*, 34 Conn. App. 176, 188, 640 A.2d 643 (1994), aff'd, 234 Conn. 194, 662 A.2d 107 (1995).

IV

The plaintiff next claims that the trial court improperly precluded her from presenting certain expert testimony from Thomas Donovan.[6] We disagree.

Donovan was employed by the Philadelphia Ritz Carlton Hotel and was offered as a witness with respect to the defendant's alleged rendezvous at the hotel with one of his female employees on a certain weekend in October, 1991. Donovan was asked to testify as to hotel policies and procedures that would have enabled him to determine the location from which the defendant placed certain telephone calls.

The testimony was proffered to rebut the defendant's claims that he placed only one telephone call to the

---

[6] The trial took place on diverse days between August 8 and September 13, 1996. The testimony of Donovan was offered by way of a deposition that was taken on September 9, 1996.

plaintiff from the woman's hotel room and that the other calls to the plaintiff were made from a telephone in the hotel lobby. The plaintiff also sought to rebut the defendant's testimony that he needed the woman's bill to exit the hotel parking garage.

The plaintiff claims that Donovan would have testified that the notations on the hotel bill indicated that all of the telephone calls made to the plaintiff's home were made from the woman's room and not from the hotel lobby, and that the defendant did not need a copy of the woman's bill to exit the garage. In addition to eroding the defendant's credibility generally, the plaintiff claims that this evidence would have shown that his adulterous affair with the woman began at a much earlier time than he had admitted and that it caused the breakup of the marriage.

In response to an objection by the defendant, the trial court noted that Donovan was proffered as an expert in hotel procedures, but the plaintiff had not met the requirements of then Practice Book § 220 (D), now § 13-4 (4).[7] After sustaining the defendant's objection to the plaintiff's proffer of Donovan as an expert, the trial court explained that the disclosure was late. In response to the question of whether there was undue prejudice as a result of the late disclosure, the court responded that the other side had not had an opportunity to combat the opinions, nor did it have sufficient

---

[7] Practice Book § 13-4 (4), formerly § 220 (D), provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

time to get an opposing expert to test Donovan's opinions.

We review the trial court's preclusion of the proffered evidence by an abuse of discretion standard. *Ormsby* v. *Frankel*, 54 Conn. App. 98, 101, 734 A.2d 575 (1999). The plaintiff challenges the trial court's conclusion that the proffered testimony called for expert opinions.[8] The questions[9] at issue required an interpretation of the hotel bill, an analysis of the workings of the telephone system and an application of hotel practices and policies to determine, on the basis of the witness' specialized knowledge and training, the place of origin of the telephone calls. In light of all these factors, we cannot say that the trial court's characterization of the evidence as expert testimony and the resulting exclusion were an abuse of the court's discretion.

The plaintiff also claims that the trial court improperly precluded Donovan from testifying as to factual matters that did not involve any expert opinions. The plaintiff specifically references two questions to which the defendant interposed objections.[10] These questions

[8] In the trial court, the plaintiff asserted that, even if Donovan's testimony were to be considered expert opinion evidence, there had been a timely and proper disclosure. The plaintiff makes no such claim here.

[9] The defendant correctly points out that the plaintiff failed to include verbatim statements of the questions, objections and claims as required by then Practice Book § 4064 (d) (3), now § 67-4 (d) (3). Although we do not condone this failure to adhere to the rules of practice, the subject questions and rulings were sufficiently delineated for us to review the plaintiff's claim.

[10] The two questions and the court's rulings are as follows:

"[Plaintiff's Counsel]: And then I see an allowance of $44?

"[Witness]: Uh-huh.

"[Plaintiff's Counsel]: What does that indicate?

"[Defendant's Counsel]: Objection, Your Honor. It calls for an interpretation.

"[Plaintiff's Counsel]: I think that's a factual statement. You can read it right from the bill.

"The Court: I don't know what the allowance is for. It doesn't say from the bill so it has to be interpreted. The objection is sustained.

"[Plaintiff's Counsel]: Was it occasionally the practice of the hotel to provide free parking along with the overnight room rate?

were also offered to show that the affair began at a date earlier than the defendant admitted and that the affair caused the breakdown of the marriage. We find no merit to the claim.

First, even if we assume that a policy of providing free parking occasionally was a factual matter, exclusion of the testimony was harmless as the plaintiff points to no evidence that any free parking was offered at the relevant time in this case. With respect to testimony that would have explained the $44 item on the bill, the trial court concluded that the question called for an interpretation as there was no explanation for the charge on the bill. Because there was no offer of proof as to the witness' answer and the basis therefor, we cannot say that the ruling was improper. Moreover, even if the court's rulings were improper, we would consider the error harmless because the trial court included the weekend trip in October, 1991, as a contributing, although not the exclusive, cause of the breakdown of the marriage.[11] We conclude that the trial court did not abuse its discretion in sustaining the objections.

V

The plaintiff next claims that the trial court improperly denied her motion to open the judgment based on alleged fraud committed by the defendant. We disagree.

The trial court rendered judgment on January 31, 1997. On November 20, 1997, the plaintiff moved to open and set aside the judgment on the ground that the defendant had failed to disclose the existence of a

"[Defendant's Counsel]: Objection, Your Honor.

"[Plaintiff's Counsel]: I believe that is factual as to what the policy was.

"The Court: Practices and policies are not facts. The objection is sustained."

[11] The court also found that the adultery of each party, the renovations to the marital home and the lack of common interests were factors that contributed to the breakdown of the marriage.

certain trust at a deposition taken on November 17, 1995, and thereafter failed to disclose the trust in his financial affidavits. There was no express allegation of fraud in the motion to open judgment.

The defendant initially funded the subject trust by deeding to himself, as trustee, the parties' former marital residence. He also made the trust the beneficiary of a life insurance policy in the amount of $38,000.

After a hearing, the trial court denied the plaintiff's motion to open the judgment for two reasons. First, the court ruled that the motion was untimely in that it was filed more than four months after the date of the judgment in violation of Practice Book § 17-4.[12] Second, the court found that the plaintiff had not proven fraud, which is an exception to the four month rule. A judgment rendered may be opened after the four month limitation if it is shown that the judgment was obtained by fraud, in the absence of actual consent or because of mutual mistake. *Hill* v. *Hill*, 25 Conn. App. 452, 455, 594 A.2d 1041, cert. denied, 220 Conn. 917, 597 A.2d 333 (1991). We conclude that the motion fairly could be read as alleging fraud and, therefore, we address the merits of the plaintiff's claim.

" 'A motion to open and vacate a judgment filed during the four months after which judgment was rendered is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court

---

[12] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

abused its discretion, this court must make every reasonable presumption in favor of its action.' " (Citations omitted.) *Acheson* v. *White*, 195 Conn. 211, 214–15, 487 A.2d 197 (1985).

The court found that fraud had not been established by clear and convincing evidence. The court also found that (1) the assets that were the subject of the trust were disclosed in the August 6, 1996 financial affidavit of the defendant, (2) the affidavit was before the court at trial and (3) the plaintiff knew of those assets at the time of the trial. The court also ruled that, in light of the relief provided in the judgment, there was no harm to the plaintiff.

The plaintiff claims that had the dissolution court known of the defendant's deception at the deposition, the court would have found him to be a less credible witness and the court's decision would have been more favorable to the plaintiff. The trust assets were disclosed during the trial, and the court in ruling on the motion to open concluded that the ruling of the dissolution court would not have been different had the defendant disclosed this trust at the deposition. We conclude that the court's finding that the plaintiff failed to prove fraud was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.