## WILLIE MYERS *v.* COMMISSIONER OF CORRECTION
### (AC 20603)

Foti, Mihalakos and O'Connell, Js.

Argued October 30, 2001—officially released January 25, 2002*

---

* January 25, 2002, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Darcy McGraw*, special public defender, for the appellant (petitioner).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, assistant state's attorney, for the appellee (respondent).

*Opinion*

O'CONNELL, J. The petitioner appeals from the denial of his amended petition for a writ of habeas corpus. He claims that (1) his attorney's performance was adversely affected by an actual conflict of interest and, alternatively, the trial court improperly failed to inquire into a potential conflict of interest, (2) the habeas court applied the wrong standard of review to his claim that the trial court failed to inquire into that potential conflict, (3) automatic reversal of the judgment of conviction is required and (4) the habeas court improperly excluded evidence. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of this appeal. The petitioner pleaded guilty under the *Alford* doctrine[1] to one count of murder in violation of General Statutes § 53a-54a and was sentenced to thirty years in the custody of the commissioner of correction. The petitioner did not take a direct appeal, but later filed a petition for a writ of habeas corpus on the ground that his incarceration was constitutionally invalid because his conviction was obtained in violation of his right to conflict free counsel. Following a hearing, the habeas court denied the peti-

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." (Internal quotation marks omitted.) *State* v. *Webb*, 62 Conn. App. 805, 807 n.1, 772 A.2d 690 (2001).

tion. The court found that the petitioner had failed to prove that a conflict of interest existed that affected his counsel's performance. Thereafter, the court granted the petitioner's petition for certification to appeal, and this appeal followed.

I

The petitioner's first two claims implicate distinct aspects of conflicts of interest. The first claim entails an alleged actual conflict while the second claim involves a potential conflict of interest.

A

The facts necessary for disposition of the petitioner's claim of actual conflict of interest on the part of his trial counsel are as follows. Following the petitioner's arrest, his mother contacted attorney William St. John to represent her son. St. John informed the petitioner's mother that he could not represent her son because another member of his law firm represented the victim in recovering a car that had been seized by the police in an unrelated matter. The same member of the firm also later represented the estate of the victim. The mother then retained, St. John's brother, Gregory St. John, to represent her son.[2]

At the habeas trial, Gregory St. John testified that he did not recall a referral of this case from his brother and that he never discussed his brother's firm's representation of the victim and later of the victim's family. William St. John testified that he probably was aware that his brother represented the petitioner, but never discussed the case with him. He also testified that he had no knowledge of the victim's files at his firm because they were handled by another lawyer in the firm.

[2] Gregory St. John and William St. John are brothers, but do not work for the same firm.

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance. . . .

"On appellate review, the historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . When, as in this case, those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review." (Citations omitted; internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 194, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001).

The habeas court found that "[t]he petitioner has shown no specific instances in the record that suggest impairment or compromise of his interests for the benefit of another party. Both brothers testified that they never discussed with each other the petitioner's case . . . ."

We conclude that the habeas court properly found that there was no actual conflict of interest and, therefore, no ineffective assistance of counsel.

## B

The petitioner also claims that the trial court failed to make the necessary inquiries when it was informed of a potential conflict of interest. We do not agree.

At the outset, we acknowledge that the petitioner has raised a constitutional claim that he did not bring in a direct appeal. "Generally, [b]ecause habeas corpus proceedings are not an additional forum for asserting claims that should properly be raised at trial or in a direct appeal, a petitioner must meet the cause and prejudice standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), for determining the reviewability of habeas claims that were not properly pursued on direct appeal." (Internal quotation marks omitted.) *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 731, 779 A.2d 156 (2001). In *Milner*, however, we held that a petitioner is not required to prove cause and prejudice if the state fails to plead the defense of procedural default in its return pursuant to Practice Book § 23-30 (b).[3] *Milner* v. *Commissioner of Correction*, supra, 734.

In this case, although the petitioner failed to raise this issue on a direct appeal, the state also failed to raise a claim of procedural default in its return. Thus, in accordance with *Milner*, we will address the merits of the petitioner's claim.

The substance of the petitioner's claim is that the trial court had a duty to inquire into the potential conflict that was brought to its attention by petitioner's counsel. During voir dire, the following colloquy occurred:

---

[3] Practice Book § 23-30 (b) provides: "The return shall respond to the allegations of the petition and shall allege any facts in support of any claim of procedural default, abuse of the writ, or any other claim that the petitioner is not entitled to relief."

"[Defense Counsel]: If Your Honor please, as I indicated to you in chambers, it came to my attention this morning the fact that there was a gentleman seated in the courtroom who I recognized and couldn't remember from where.

"Ultimately, I come to find out that the gentleman is the stepfather of the victim. And, of course, he made a reference to this particular social event, and all of a sudden it dawned on me how I knew the man and how I knew his wife, who is the mother of the victim. It has been several years at least since I have socialized with them. We only did it, probably, four or five times anyhow, at most.

"I have reviewed that subject with my client, because I don't want to portray even the appearance of impropriety or appearance of conflict of interest. I don't really think there's a conflict of interest. I don't think there's even an appearance of impropriety.

"But, I put this on the record because I have advised my client of that information. He has indicated to me that he understands what I have advised him and even in light of that, he still wishes me to remain as his counsel.

"The Court: All right. And is that the case, Mr. Myers?

"The Defendant: Yes."

The petitioner contends that the court, after being alerted by counsel to the possibility of a conflict, improperly relied on the representations of counsel that no conflict existed and instead, sua sponte, should have conducted a more thorough and searching inquiry. "There are two circumstances under which a trial court has a duty to inquire with respect to a conflict of interest: (1) when there has been a timely conflict objection at trial . . . or (2) when the trial court knows or reasonably should know that a particular conflict exists . . . . A trial court's failure to inquire in such circum-

stances constitutes the basis for reversal of a defendant's conviction. . . . In the absence of an affirmative duty by the trial court to inquire, however, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his [or her] lawyer's performance in order to obtain reversal of his [or her] conviction. . . . Before the trial court is charged with a duty to inquire, the evidence of a specific conflict must be sufficient to alert a reasonable trial judge that the defendant's sixth amendment right to effective assistance of counsel is in jeopardy." (Citations omitted; internal quotation marks omitted.) *State* v. *Gaines*, 257 Conn. 695, 708, 778 A.2d 919 (2001).

During the course of its inquiry as to the existence of a conflict, "the trial court must be able, and be freely permitted, to rely upon counsel's representation that the possibility of such a conflict does or does not exist." (Internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 82, 513 A.2d 116 (1986). "[T]rial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. An attorney [facing a possible conflict] in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest *exists or will probably develop in the course of a trial.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Gaines*, supra, 257 Conn. 708–709.

Under the facts of the present case, we conclude that the trial court fulfilled its obligation to inquire into the potential conflict by relying on counsel's assurances, as well as the petitioner's response to the judge's question.

II

The petitioner next claims that the habeas court applied an incorrect standard in reviewing the claim that the trial court failed to inquire adequately into the potential conflict of interest. The petitioner, relying on

*State* v. *Crespo*, 246 Conn. 665, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999), argues that the proper standard requires that if a court knows or reasonably should know of the potential conflict of interest, the court must first obtain a knowing and intelligent waiver of the right to conflict free counsel before proceeding. Our review of *Crespo* does not reveal any such requirement. In fact, in *State* v. *Cator*, 256 Conn. 785, 781 A.2d 285 (2001), our Supreme Court stated: "The scope of a court's inquiry, or the necessity for such inquiry, however, depends on the circumstances, and a court need not necessarily elicit a waiver. *State* v. *Cruz*, 41 Conn. App. 809, 814–15, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996)." (Internal quotation marks omitted.) *State* v. *Cator*, supra, 795. Thus, we conclude that the habeas court applied the correct standard in reviewing the petitioner's claim.

### III

Next, the petitioner claims that the trial court's failure to inquire into the potential conflict of interest and to obtain a waiver of the petitioner's right to conflict free counsel requires automatic reversal of the petitioner's conviction. This claim has no merit.

Even if the trial court had failed to conduct an adequate inquiry, automatic reversal would not be appropriate in a posthabeas appeal. "Automatic reversal is appropriate only on direct appeal from the judgment of conviction. . . . While automatic reversal may be appropriate on direct appeal when the reviewing court concludes that the trial court had failed to inquire into a possible conflict of which it should have been aware, it is entirely inappropriate as a remedy in a posthabeas review. It would be incongruous to conclude that a conviction must be reversed because there may have been a possible conflict of which the court failed to

inquire, notwithstanding that it had been conclusively determined that there was no conflict." *State* v. *Crespo*, supra, 246 Conn. 694–95 n.27.

## IV

Finally, the petitioner claims that the habeas court improperly refused to admit an exhibit into evidence. We are not persuaded.

At the habeas trial, the petitioner marked as an exhibit for identification purposes a file from William St. John's law firm concerning the representation of the victim's estate. When the petitioner moved to admit the exhibit as a full exhibit, the state objected on the basis of relevancy because the file had not been opened at the time Gregory St. John began representing the petitioner and William St. John was unaware of its existence. The court sustained the objection.

Before we reach the merits of this claim, we note that the petitioner failed to comply with Practice Book § 67-4 (d) (3) in raising this claim.[4] The petitioner did not provide the habeas court with a verbatim account of the offer, objection and ruling. In fact, the petitioner fails to set out the basis of the court's ruling altogether. Generally, this court will not review claims that are improperly briefed. Although we do not condone this failure to adhere to the rules of practice, in this case, the subject ruling was sufficiently delineated for us to review the petitioner's claim. See *Wilkes* v. *Wilkes*, 55 Conn. App. 313, 323 n.9, 738 A.2d 758 (1999).

"It is well established that [t]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary

---

[1] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."

matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Vasquez,* 66 Conn. App. 118, 130, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). On the basis of our review of the record, we conclude that the habeas court properly refused to allow the file into evidence on the ground of relevancy.

The judgment is affirmed.

In this opinion the other judges concurred.

