JASON M. DAY *v.* COMMISSIONER OF CORRECTION
(AC 29604)

Beach, Alvord and West, Js.

Argued September 16—officially released November 24, 2009

*Mary Boehlert*, special public defender, for the appellant (petitioner).

*Gerard P. Eisenman*, senior assistant state's attorney, with whom, on the brief, was *John C. Smriga*, state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, Jason M. Day, appeals from the judgment of the habeas court denying his second petition for a writ of habeas corpus. The court granted the petition for certification to appeal. The petitioner makes two claims on appeal. First, the petitioner claims that the court abused its discretion when it refused to grant him a continuance to appeal from a previous denial of his pro se application to subpoena his trial counsel to testify at the habeas trial. Second, the petitioner claims that the court improperly denied his petition because an actual conflict of interest existed between the petitioner and his counsel from his first habeas trial that prevented the petitioner from receiving effective assistance of counsel. We affirm the judgment of the habeas court.

In 1991, the petitioner was convicted of one count of capital felony in violation of General Statutes § 53a-54b (8), four counts of murder in violation of General Statutes § 53a-54a (a) and one count of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] Our Supreme Court affirmed the petitioner's underlying conviction in *State* v. *Day*, 233 Conn. 813, 661 A.2d 539 (1995). On March 2, 2001, through counsel, the petitioner filed his first amended petition for a writ of habeas corpus. In it, he alleged numerous claims of ineffectiveness on the part of his trial counsel. After a hearing, the petition was denied. This court affirmed that judgment in *Day* v. *Commissioner of Correction*, 86 Conn. App. 522, 862 A.2d 309 (2004). On June 7, 2005, the petitioner then filed the pro se habeas corpus petition that is the subject of this appeal. In it, the petitioner claimed that he was denied his statutory right to the effective assistance of habeas counsel because his attorney, James J. Ruane, had failed to raise a claim of actual innocence and a specific claim concerning

[1] Our Supreme Court set out the following facts that underlie the petitioner's conviction: "In early 1990, the [petitioner] resided in a one bedroom apartment in Bridgeport with his girlfriend, Lisa G.; Lisa's brother, Raymond G.; Raymond's girlfriend, Theresa H.; Gloria S.; and Theresa's sons, five year old George G. and two year old Marcus G. Sometime before 10 p.m. on March 19, 1990, the [petitioner] shot and killed Raymond G., Lisa G. and George G. in the apartment. The [petitioner] also shot and killed Theresa H. while she was in her car in the parking area of the apartment house and dragged her body to an adjacent storage shed. Either before or after shooting Theresa H., the [petitioner] repeatedly struck her in the head with the blade of a snow shovel. Each victim was shot in the head from close range. Marcus G., who was present in the apartment when the shootings took place, had been slapped in the face by the [petitioner] but had not been shot. The [petitioner] thereafter drove Theresa H.'s car to a hospital in New York City, where he requested treatment under an assumed name and was diagnosed as having a fractured toe. Although he was scheduled for surgery, the [petitioner] left the hospital before the operation was due to be performed. He subsequently was apprehended in a hospital in Baltimore by agents of the Federal Bureau of Investigation (FBI) on charges of unlawful flight to avoid prosecution. While in custody, the [petitioner] confessed his role in the killings to FBI agents." *State* v. *Day*, 233 Conn. 813, 817, 661 A.2d 539 (1995).

ineffective assistance of trial counsel in the habeas petition filed in 2001. By memorandum of decision issued August 27, 2007, the court, *A. Santos, J.*, denied the petition and subsequently granted certification to appeal. Further facts will be set forth as necessary.

## I

The petitioner first claims that the court abused its discretion when it refused to grant him a continuance to appeal from a previous denial of his request to subpoena his trial counsel to testify at the habeas trial. We disagree.

The following facts and procedural history are relevant to our resolution of the petitioner's claim. On December 1, 2006, the petitioner filed with the court a pro se application to subpoena his trial counsel to testify at the habeas trial.[2] He sought the issuance of subpoenas for attorney Patrick J. Culligan and then attorney William Holden,[3] each of whom had represented the petitioner at his criminal trial. On January 10, 2007, the court, *Swords, J.*, denied the petitioner's application. On February 6, 2007, the petitioner, pursuant to General Statutes § 52-470, filed with the court a petition for certification to appeal from, inter alia, the court's denial of his application to subpoena Culligan and Holden. On March 27, 2007, Judge Swords denied the petition for certification to appeal.

The habeas trial commenced on May 7, 2007. Preliminarily, Judge Santos addressed the petitioner's request for a continuance to pursue his appeal from Judge Swords' denial of his application for subpoenas. The petitioner stated, "I appealed [Judge Swords'] denial to the Appellate Court. Inadvertently, it was sent to the

---

[2] The record reveals that the petitioner also sought to subpoena Ruane, his previous habeas counsel, to testify at the second habeas trial. The court granted this application.

[3] The Honorable William Holden is currently a Superior Court judge.

wrong address." The petitioner informed the court, upon its inquiry, that he had sought to subpoena his trial counsel, Culligan and Holden. Judge Santos then inquired whether Gerard P. Eisenman, the senior assistant state's attorney representing the respondent, the commissioner of correction, was aware of the petitioner's purported appeal. Eisenman stated that he was aware of it but that he believed that the Appellate Court would not reach the merits of any such appeal because it was not brought from an appealable final judgment. The court denied the petitioner's request for a continuance.

"It is well settled that [t]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . . Therefore, on appeal, we . . . must determine whether the trial court's decision denying the request for a continuance was arbitrary or unreasonabl[e]." (Internal quotation marks omitted.) *Hamlin* v. *Commissioner of Correction*, 113 Conn. App. 586, 592, 967 A.2d 525, cert. denied, 291 Conn. 917, 970 A.2d 728 (2009).

Here, the request for a continuance was made at the start of the habeas trial. "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) Id., 593. Moreover, the petitioner immediately qualified his representation to the court that an appeal had been filed by admitting that it inadvertently had been mailed to the wrong address. Our review of the record reveals that it is bereft

of any indication that an appeal actually was filed at the time of the court's denial of the petitioner's request.[4] See id. ("[t]he right of a [petitioner] to a continuance is not absolute and the propriety of a denial of one is to be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied*" [emphasis added; internal quotation marks omitted]). Therefore, we cannot conclude that the court abused its discretion in denying the petitioner's request for a continuance at the start of trial to await the adjudication of an appeal that, by the petitioner's admission, had yet to be filed properly.

---

[4] At oral argument before this court, counsel for the petitioner conceded that there was no indication in the record that he had filed the appeal in question at the time of the court's denial of his request for a continuance.

The petitioner also seems to argue that regardless of whether the appeal from the denial of his application for subpoenas for Culligan and Holden had been properly filed at the time of the request for a continuance, the court abused its discretion in denying the request. He contends that because the respondent would not have been put at a disadvantage or undue hardship by a continuance and that he was substantially impaired in presenting his case, the court had no legitimate reason to deny his request for a continuance to await the outcome of an appeal. We cannot agree.

"We have identified several factors that a trial court may consider when exercising its discretion in granting or denying a motion for continuance. . . . These factors include the likely length of the delay . . . the impact of delay on the litigants, witnesses, opposing counsel and the court . . . the perceived legitimacy of the reasons proffered in support of the request . . . [and] the likelihood that the denial would substantially impair the [petitioner's] ability to [present his case]." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 787, 911 A.2d 1099 (2007). We also note that the court need not have considered all of those factors enumerated in exercising its discretion to deny the petitioner's request for a continuance. See *West Haven Lumber Co.* v. *Sentry Construction Corp.*, 117 Conn. App. 465, 471, 979 A.2d 591 (2009).

The record reveals, however, that the court considered the timeliness of the request as well as the likelihood that the denial would substantially impair the petitioner's ability to present his case. Moreover, the court was provided with no evidence as to the likely length of the delay to be caused by the continuance. On the basis of our review of the record, therefore, we cannot agree that the court abused its discretion when it denied the petitioner's request for a continuance.

## II

Next, the petitioner claims that the court improperly denied his petition because an actual conflict of interest existed between him and his counsel from his first habeas trial that prevented the petitioner from receiving effective assistance of counsel. Specifically, the petitioner claims that a conflict arose when Ruane advised the petitioner that he could not in good conscience raise a claim of actual innocence or a claim involving trial counsel's failure to request a specific jury instruction.[5] We disagree.

"[A] petitioner in a habeas proceeding has both the right to effective assistance of habeas counsel and the right to be represented by habeas counsel who is free from conflicts of interest." *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 133, 866 A.2d 649 (2005). We must determine, therefore, whether a conflict of interest existed.

"Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. Where . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual

---

[5] On direct appeal from his criminal conviction, the petitioner made a claim concerning the " 'two witness' rule codified at General Statutes § 54-83, which provides that '[n]o person may be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto.' Although the [petitioner] neither [asked] the trial court to charge on the statute nor excepted to the jury charge as given, [on appeal] he . . . claim[ed] that the court's failure to instruct the jury on the rule requires that his conviction be reversed." *State* v. *Day*, supra, 233 Conn. 848. Our Supreme Court concluded that because it was not more likely than not that the trial court's failure to instruct on § 54-83 affected the verdict, the petitioner could not prevail on his claim of plain error. See id., 852. It is with regard to trial counsel's alleged failure to challenge that jury charge that the petitioner requested that Ruane file the claim in question in this appeal.

prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance. . . .

"On appellate review, the historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . ." (Internal quotation marks omitted.) *Myers* v. *Commissioner of Correction*, 68 Conn. App. 31, 34, 789 A.2d 999, cert. denied, 260 Conn. 907, 795 A.2d 545 (2002). When, however, as in this case, those facts are essential to a determination of whether the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review. See id.

The petitioner claims that an actual conflict of interest resulted from "Ruane's refusal to adequately and independently investigate the petitioner's claims [of actual innocence and trial counsel's failure to request a specific jury instruction; see footnote 5]; and by refusing to follow [the petitioner's] request to withdraw from his representation if he refused to pursue the . . . strategy communicated by [the petitioner]." On the basis of our review of the record, we conclude that the petitioner's claim has no merit. Ruane testified at the petitioner's habeas trial. That testimony reflects that he adequately and independently investigated each of the petitioner's claims at issue here and correctly declined to withdraw from his representation of the

petitioner because of the alleged conflict of interest.[6] Cf. *Santiago* v. *Commissioner of Correction*, 87 Conn. App. 568, 591 n.20, 867 A.2d 70 ("[i]n determining whether counsel's performance was adversely affected by an actual conflict of interest, counsel's testimony regarding the reasons for his or her trial strategy is wholly proper evidence to be considered and credited by the court"), cert. denied, 273 Conn. 930, 873 A.2d 997 (2005).

The petitioner has failed to demonstrate, and the record does not reveal, that Ruane actively represented conflicting interests as a result of either circumstance of which the petitioner complains. There was no evidence that Ruane's interests were diverse from those of the petitioner or that his performance was affected adversely by any alleged conflict. See *Myers* v. *Commissioner of Correction*, supra, 68 Conn. App. 34.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Ruane testified that he investigated the possibility of asserting the petitioner's claim of actual innocence but that he "could not find sufficient evidence to make that claim go forward." Ruane testified that he reviewed the entire file and transcript from the petitioner's criminal trial and interviewed Culligan, Holden and the petitioner. He also testified that he found no newly discovered evidence to support a claim of actual innocence. Ruane, on the basis of that investigation, concluded that the claim of actual innocence had no merit. Ruane also testified that in regard to the proposed jury instruction claim, he interviewed the attorney who represented the petitioner in the direct appeal from the criminal conviction. Ruane concluded, on the basis of that investigation, that the issue involving the jury instruction also had no merit. Ruane also testified that he viewed the disagreement as one involving the merit of proposed claims and not a conflict of interest with the petitioner and, therefore, concluded that he should not withdraw from his representation.